UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOUGHT CONSTRUCTION INC., <br><br> Plaintiff, <br><br> v. <br><br> ALLIED WORLD SURPLUS LINES INSURANCE COMPANY, <br><br> Defendant. | Case No. 24-cv-01838-WHO <br><br> **ORDER ON THE CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 30, 54, 55 |

Plaintiff Vought Construction, Inc. ("Vought") asserts claims for breach of contract and beach of the implied covenant of good faith and fair dealing against defendant Allied World Surplus Lines Insurance Co. ("Allied World") based on Allied World's decision not to represent Vought in an underlying state court suit. Pending before the court are the parties' respective motions for summary judgment. Vought moves for partial summary adjudication of its duty to defend claim; Allied World moves for summary adjudication of all of Vought's claims. In the alternative, Allied World moves for partial summary adjudication of Vought's indemnification claim. Because Vought established the possibility of liability and Allied World could not meet its burden to show that no conceivable theory could raise an issue that would bring the underlying complaint within policy coverage, Vought's Motion for Partial Summary Judgment is GRANTED. Allied World's Motion for Summary Judgment is DENIED except with respect to coverage of defective work, which is excluded.

## BACKGROUND

### A. Allied World's Insurance Policies

The following are the undisputed facts. Vought purchased five consecutive one-year Commercial General Liability insurance policies from Allied World, covering the time period of

November 1, 2017, to November 1, 2022. Complaint ("Compl.") [Dkt. No. 1] ¶ 10. As relevant to this case, the policies provided Vought with "BODILY INJURY AND PROPERTY DAMAGE LIABILITY." *Id.* at ¶ 15. Specifically, Allied World would "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage'" as defined by the policies. *Id.* at ¶ 16. This obligation extended to a "right and duty to defend the insured against any 'suit' seeking those damages." *Id.* The policy covered only that "property damage" that was "caused by an 'occurrence'" that happened in the United States during the policy period and where, "[p]rior to the policy period, no insured . . . knew that . . . 'property damage' had occurred." *Id.*

The policy further defined "property damage" to be "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." *Id.* at ¶ 20. Or, for property that was not physically injured, "[a]ll such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." *Id.* The policies define an "occurrence" to be "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at ¶ 19.

The SUPPLEMENTARY PAYMENTS provision of the polices states that Allied World "will pay, with respect to any claim [it] investigate[s] . . . [a]ll reasonable expenses incurred by the insured at [its] request to assist [Allied World] in the investigation or defense of the claim or 'suit.'" *Id.* at ¶ 23. The polices required that Vought, as an insured party, provide Allied World with any information as to any possible "occurrence," that *might* result in a claim, or, if a suit was brought against Vought, Allied World required "written notice of the claim . . . as soon as practicable." *Id.* at ¶ 25. This notice requirement additionally mandated that Vought give Allied World any paperwork related to any lawsuit. *Id.*

The policies include a number of exclusions, three of which are relevant in this case. *See* Policy Exclusions [Dkt. No. 55] at 6–11 (detailing exclusions labeled "a-q" as related to the BODILY INJURY AND PROPERTY DAMAGE LIABILITY portion of the policies). The Total Professional Services Exclusion states that Allied World will not cover "any liability arising out of . . . any breach of duty or negligent act, error omission, malpractice or mistake in the rendering of,

2

or failure to render, any professional services; or . . . of a professional nature." Total Services Exclusion [Dkt. No. 55] at 44. The terms "professional services" or "of a professional nature" are not defined. The policies also include two exclusions that preclude coverage for any defective work. The j(5) exclusion prevents coverage for any "particular part of real property on which [the insured] or any contractors or subcontractors working directly or indirectly on [] behalf [of the insured] are performing operations, if the 'property damage' arises out of those operations." Policy Exclusions [Dkt. No. 55] at 10. Similarly, the j(6) exclusion disallows coverage for "[t]hat particular part of any property that must be restored, repaired or replaced because '[the insured's] work' was incorrectly performed on it." *Id.*

### B. The Boblett Action

In December 2019, Vought filed a complaint in Alameda County Superior Court against non-party Brennan Boblett, an owner/developer who contracted with Vought to conduct construction work on portions of his personal property located in Oakland, California. Vought Complaint [Dkt. No. 39] at 79.[1] Vought alleged that, as a result of Boblett's actions (and inactions) during the course of the project, Boblett owed Vought more than $100,000. *Id.* at 84. As is relevant here, on April 15, 2020, Boblett filed a cross-complaint against Vought. Boblett Cross-Complaint [Dkt. No. 1-5] at 3–8. Boblett alleged a minimum of $450,000 in damages and asserted a breach of contract and a negligence claim. In his breach of contract claim against Vought, Boblett alleged that Vought:

> (a) Failed to provide adequate competent supervision; (b) Failed to complete the work in a timely fashion; (c) Failed to perform the work in accordance with the plans and specification; (d) Failed to perform the work in accordance with the standard of care applicable to the work performed under the Contract; and, (e) Performed the work under the Contract in an unworkmanlike fashion.

Dkt. No. 1-5 at 5–6. On his negligence claim, Boblett relatedly asserted that because of Vought's inadequate supervision and negligent performance, "the Project was constructed improperly,

---

[1] Vought requests that I take judicial notice of the underlying action. Allied World does not oppose. Vought Mot. 2. The request for judicial notice is GRANTED.

3

negligently, carelessly, and in an unworkmanlike manner." *Id.*

During the course of discovery in the underlying case, Boblett provided declarations in which he elaborated on his concerns with Vought's performance and specified the damages he sought. Boblett sought relief in the form of three categories of damages: (1) the cost to repair Vought's inadequate work and subsequently complete the project, (2) the total additional rent, construction mortgage interest, and site costs accrued due to the delay Boblett attributes to Vought's negligence, and, (3) the return of more than $40,000 he believed Vought improperly charged for incorrect and/or repair-based work. Boblett Apr. 21, 2023 Decl. [Dkt. No. 51] at 3–4.

Referring to the delays, Boblett testified that Vought caused cracks in the roadway near the project site through use of a large excavation machine. Boblett Jan. 24, 2023 Decl. [Dkt. No. 53] at 20. That structural damage on the street prevented the use of a crane during the project—leading to an extended project period of anywhere between seven to fourteen months. *Id.* (citing a delay of seven months); *id.* at 24 (citing a delay of eleven months); Boblett Apr. 21, 2023 Decl. [Dkt. No. 51] at 3 (citing a delay of fourteen months). Boblett also testified that Vought did not check with the City of Oakland to ensure the required encroachment permit had been issued before starting work that required said permit. Boblett Sept. 22, 2023 Decl. [Dkt. No. 53] at 37. And, although Boblett acknowledged that Vought was not responsible for obtaining a permit, he stated that as a general contractor Vought *was* "responsible for checking in with the City to ensure that the permits are valid and active before they perform any work." *Id.* Because of Vought neglecting to do so, Boblett alleged, further delays in permitting resulted. *Id.* at 36–7.

In January 2023, days before the scheduled bench trial, Vought accepted Boblett's offer to settle. Compl. ¶ 41. Pursuant to the settlement agreement, both Vought's complaint and Boblett's cross-complaint were dismissed with prejudice—each party agreed to a full release of claims, damages, or fees arising from or related to the Boblett Action. Dkt. No. 1-7 at 32–35; Settlement Agreement [Dkt. No. 60] at 86. Neither party collected damages from the other.

### C. Vought's Communication With Allied World

During the pendency of the Boblett Action, Vought consistently communicated with Allied World, maintaining its perspective that Allied World owed Vought a duty to defend against

4

1  Boblett's cross-claim and reimbursement for legal costs pursuant to the policies. Compl. ¶¶ 32–
2  49. Allied World first denied coverage in October 2020, informing Vought that, in its view, no
3  coverage was appropriate because no "occurrence" took place according to the policy definition.
4  Dkt. 1-5 at 36–43. And, in the alternative, Allied World concluded that even if an "occurrence"
5  did take place, any resulting property damage would be precluded by the j(5) and j(6) exclusionary
6  provisions of the policy. *Id.*

7  Vought submitted several reconsiderations to Allied World as the Boblett Action moved
8  forward, and continued to provide Allied World with updated pleadings, discovery, and
9  information. Compl. at ¶ 33. After the dismissal of the Boblett Action, Vought sent Allied World
10 updated demand letters and emails seeking coverage. *Id.* at ¶ 33–43. Throughout, Allied World
11 stayed firm in its view that "there is no possibility that Mr. Boblett's claims might be covered
12 under the Allied World policy."[2] Dkt. 1-7 at 6.

13 On March 25, 2024, Vought filed this suit, alleging breach of contract claims and a tortious
14 breach of the implied covenant of good faith and fair dealing claim against Allied World. Compl.
15 ¶¶ 50–73. Along with a favorable judgment, Vought seeks monetary damages, extra-contractual
16 damages (including punitive damages), and an award of reasonable attorney fees and costs.
17 Compl. 33. On August 28, 2024, it moved for partial summary judgment. *See* Vought Motion for
18 Summary Judgment ("Vought Mot.") [Dkt. No. 30]. Allied World filed a cross-motion for
19 summary judgment that same day. *See* Allied World Motion for Summary Judgment ("Allied
20 World Mot.") [Dkt. No. 54].

21 **LEGAL STANDARD**

22 Summary judgment on a claim or defense is appropriate "if the movant shows that there is

---

[2] In its papers, Vought frequently cites to what it views as an admission of Allied World. In a letter dated March 2023, Allied World states that it "acknowledges that damage to the street/curb might constitute "property damage" as defined." 2023 Coverage Denial [Dkt. 1-6] at 28. The paragraph continues: "However, while Mr. Boblett testified that the Insured's excavators damaged portions of the street during their operations, Mr. Boblett also testified in no uncertain terms that neither the City nor County (nor any other entity) has brought a claim against him for costs to repair any such damages." *Id.* (emphasis removed). Unlike Vought, I do not see this as a departure from Allied World's clear view that Boblett's claims against Vought were not covered, so I do not regard it as an admission. *See infra* Discussion Part I.A.i.

5

1  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
2  law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show
3  the absence of a genuine issue of material fact with respect to an essential element of the non-
4  moving party's claim, or to a defense on which the non-moving party will bear the burden of
5  persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has
6  made this showing, the burden then shifts to the party opposing summary judgment to identify
7  "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary
8  judgment must then present affirmative evidence from which a jury could return a verdict in that
9  party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

10  On summary judgment, the court draws all reasonable factual inferences in favor of the
11  non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility
12  determinations, the weighing of the evidence, and the drawing of legitimate inferences from the
13  facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony
14  does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*
15  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.  DUTY TO DEFEND**

Under California law, "[a]n insurer has a very broad duty to defend." *Anthem Electronics, Inc. v. Pacific Empl's Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). This broad duty entitles an insured "to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 299 (1993). But "the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995).

In determining whether a duty to defend exists, three steps are available for a court to review. First, an insured can "establish[] potential liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured

6

intends to rely." *Montrose Chem. Corp.*, 6 Cal. 4th at 299. "[T]he extrinsic facts which may create a duty to defend must be *known by the insurer* at the *inception* of the third party lawsuit." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995) (emphasis in original). These extrinsic facts "give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Waller*, 11 Cal. 4th at 19. Second, at that point, the "insurer must assume its duty to defend unless and until it can conclusively refute that potential." *Montrose Chem. Corp.*, 6 Cal. 4th at 299.[3] And, to be fully relieved of the duty to defend, the insurer must demonstrate that "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 n.15 (1966).

Vought seeks summary judgment on its duty to defend claim, arguing that the undisputed facts show that Allied World owed Vought a duty to defend against the claims asserted against it in the Boblett Action. Allied World counters that Vought's duty to defend claim fails as a matter of law because Vought was not "legally obligated" to pay damages related to any "property damage" as defined by the policies. Because Vought need only establish the "potential" or "possibility" of liability for Allied World's duty to defend to attach, and because Allied World has not met its burden in demonstrating that the Boblett complaint could, "by no conceivable theory raise a single issue which could bring it within the policy coverage," I conclude that Vought has established Allied World's duty to defend. *Gray*, 65 Cal. 2d at 276 n.15.

## PROPERTY DAMAGE

Allied World correctly states that according to the policies, "to trigger the duty to defend, there must be allegations of property damage, and allegations that the property damage shall result in money ordered by the court." Allied World Mot. 16. Here, both types of property damage anticipated by the polices (physical injury to tangible property, including all resulting loss of use of that property and loss of use of tangible property that is *not* physically injured) are at issue. Policy [Dkt. No. 33] at 24; [Dkt. No. 1-1 at 20].

---

[3] Under California insurance law, an insurer is required to investigate all claims promptly. Cal. Ins. Code § 790.03(h)(3).

7

### A. Physical Injury to Tangible Property

In its motion, Allied World focuses solely on physically injured property as potential grounds for coverage. Allied World Mot. 16–24. Specifically, it argues that it was not liable to cover Vought in the underlying action based on Boblett's allegations of: (1) Vought causing the cracks in the street curb or (2) any defective work Vought completed on the property. In California, "direct physical loss or damage to property requires a distinct, demonstrable, physical alteration to property." *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 15 Cal. 5th 1106, 1117 (2024). "The physical alteration need not be visible to the naked eye, nor must it be structural, but it must result in some injury to or impairment of the property as property." *Id.*

#### i. Cracks in the Street

To begin, Boblett did not specifically allege in his cross-complaint that Vought was liable for damages to the street curb. Boblett Compl. [Dkt. No. 1-5] at 3–8. But looking to extrinsic evidence available at the start of the Boblett Action, *see Montrose Chem. Corp.* 6 Cal. 4th 287, Vought points to Boblett's June 2020 responses to form interrogatories, in which Boblett specifies asserted damages arising from an array of alleged injuries. *See* 2020 Coverage Denial [Dkt. No. 37] at 2; Boblett Resp. Interrog. [Dkt. No. 39] at 241–42. Among those damages, Boblett includes an estimated $82,500 for a "delay of eleven months." *Id.* He does not specify further about the cause of said delay.

Boblett apparently did not discuss the curb damages at length until his January 2023 deposition. There, he explained that because of "the street damage that Vought had created" by its consistent use of the excavator tool on the area, the plan to utilize a crane to expedite construction had to be revised. Boblett Jan. 24, 2023 Decl. [Dkt. No. 53] at 31. Boblett further stated that "the cracks that are leading on to my site [are] where [Vought's] excavator came in and out multiple times." *Id.* at 32. As for the cracks themselves, when asked at a later deposition whether he intended to repair the street, Boblett responded that he had "not been notified of any of those [cracks] that need repair. And . . . a lot of those cracks have existed all these years dating back to when Vought was on the job with the initial excavation work. So these cracks aren't anything new. They've been there for over three years now." Boblett Sept. 22, 2023 Decl. [Dkt. No. 53] at

8

34. Boblett could not recall whether the cracks pre-dated Vought's time working on the property, and he confirmed that the City of Oakland never filed a claim against him to hold him liable for damages to city property. Boblett Jan. 24, 2023 Decl. [Dkt. No. 53] at 23–4. In Allied World's view, these statements indicate that "Boblett never alleged that Vought is 'legally obligated to pay as damages' for the cracks in the street." Allied World Mot. 17.

As Vought indicates, in its 2023 denial of coverage, Allied World does "acknowledge[] that damage to the street/curb might constitute 'property damage' as defined." 2023 Coverage Denial [Dkt. No. 1-6] at 28. But because Boblett was never held liable for those damages by the City, Allied World asserts, there could never have been even the *possibility* that Boblett could try and hold Vought "legally obligated" to cover them. *Id.*; Policy [Dkt. No. 1-1 at 6]. Allied World's arguments do not, however, meet the high burden of demonstrating that Boblett's cross complaint "can by no conceivable theory raise a single issue" concerning the cracks in the street that "would bring it within the policy coverage." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d at 276 n.15. Allied World's arguments in reference to this motion, along with the information presented in its coverage denials, do not lend support to an understanding that its investigation of the Boblett action conclusively determined a lack of duty to defend.

Boblett stated during a later deposition, for example, that although he has no intention of repairing the cracks for the benefit of the City, he was "aware . . . from a water and drainage standpoint, [he] need[s] to keep that area maintained so that it doesn't block any of [the] down street drainage and whatnot." Boblett Sept. 22, 2023 [Dkt. No. 53] at 34. One reading of Boblett's deposition is that he recognizes the damage done to the street and may wish to repair it for his own benefit and use—especially considering the related construction delays that I address below. Boblett's later clarification concerning the elements of the "delay" were not available at the "inception" of the lawsuit. *Gunderson*, 37 Cal. App. 4th at 1114. For that reason, it cannot be considered in a duty to defend analysis. It is only relevant in so far as it is a demonstration of one interpretation of Boblett's allegations of "delay" at the time he filed his cross-complaint, an interpretation that Allied World has made no demonstration of ruling out over the course of its investigation.

Although the information available at the inception of the Boblett cross-complaint action is limited, consisting solely of (1) Boblett's complaint alleging a claim for negligence and (2) his response to the interrogatories referring to the delay, I conclude that Allied World could have in the very least determined that "the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp.*, 6 Cal. 4th at 299. To that end, I conclude that Vought could establish a possibility that the cracks on the street constituted "property damage."

### 1. "Occurrence"

Before Vought can fully establish a potential for liability for the cracks in the street, however, it must satisfy the second prong of the policy—that the 'property damage' in question was possibly caused by an 'occurrence.' Policy. [Dkt. No. 1-1] at 6. As I previously mentioned, the policies define an "occurrence" to be "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy [Dkt. No. 1-1] at 20. An accident, in turn, is defined by California law as "an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216, 221 (2018). Further, "[t]he term 'accident' is more comprehensive than the term 'negligence' and thus includes negligence. . . . Accordingly, a policy providing a defense . . . for . . . injury caused by 'an accident' promises coverage for liability resulting from the insured's negligent acts." *Id.* (internal quotation marks and citations omitted).

Boblett sued Vought in part on a cause of action for negligence. Although Allied World asserts that Vought's decision to repeatedly drive the excavator over the street was intentional and led to obvious results, and therefore was not accidental, it provides no factual basis with which to support its claim. Allied World Oppo. at 16–17. As the Ninth Circuit noted in *Anthem*, "[t]he *possibility* that the defects were unexpected is enough to trigger the insurers' duty to defend." 302 F.3d at 1056. (emphasis added). Here, without more, I cannot conclude that the cracks in the street were the obvious result of intentional action. And, "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose Chem. Corp.*, 6 Cal.4th at 299–300. Accordingly, I conclude that Vought has established potential

10

1 for coverage arising from the occurrence(s) leading to the cracks in the street.  In so doing, it has
2 established that Allied World had a duty to defend it in the underlying Boblett action.

### ii. Defective Work

Allied World next asserts that it did not have a duty to defend Vought against Boblett's claims for damages to his residence, because those damages are not a result of "property damage" as defined by the polices.  Allied World Mot. 17.  These damages, based on Boblett's deposition testimony and discovery, included claims for: overexcavation of the pool, improperly poured foundation, deficiently built CMU walls, and the improper placement of the pool, foundation, grade beams, and various other elements.  Allied World Mot. 12–14.

The j(5) and j(6) exclusions, as noted, preclude from coverage any part of any property that has been worked on by the insured and is found to need restoration, repair, or replacement due to the actions of the insured.  Policy. [Dkt. No. 1-1] at 10.  The Professional Services Exclusion, in kind, precludes Allied World from covering liability arising out of "any breach of duty or negligent act, error, omission, malpractice or mistake in the rendering of, or failure to render, any professional services" or "of a professional nature."[4]  Allied World contends that these three exclusions prevent it from exercising any duty to defend Vought from damages alleged for defective work.

Vought does not address, nor does it appear to raise in its complaint or elsewhere in the record, whether any damages alleged by Boblett for "defective work" are covered under the policies.[5]  These exceptions plainly disallow a duty to defend as it relates to Boblett's damages claims for Vought's defective work product.  To the extent that Allied World moves for summary adjudication that it did not have a duty to defend Vought concerning any alleged defective work in

---

[4] The Professional Liability exclusion applies even if, as here, the claims asserted against the insured allege negligence.  Total Professional Services Exclusion [Dkt. No. 55] at 44.  But, again, the exclusion does not apply to "property damages" as defined by the policy, resulting from insured's actions.  *Id.*

[5] Although Vought does discuss the j(5), j(6), and Professional Services exclusions in opposition to Allied's motion, it does so in the context of loss of use.  Vought Oppo. at 17–22.  Allied does not argue that these exclusions are relevant for property damages related to loss of use—only for defective work.  Allied World Mot. at 18–24.

11

the underlying case, I GRANT its motion for summary judgment in part.

### B. Loss of Use Property Damage

Although Vought addresses physical damage in its Motion, the bulk of its arguments center on the policies' provision detailing coverage for property damage as it pertains to "loss of use." *See generally* Vought Mot.; Vought Oppo. Vought contends that delay was a central portion of Boblett's cross-complaint against it. Although Boblett did not specifically allege "loss of use" in his cross-complaint, Vought may also look to extrinsic evidence available at the start of litigation to establish the potential for liability. *Montrose Chem. Corp.*, 6 Cal. 4th at 299. To repeat, Boblett's June 2020 responses to form interrogatories specifically denote a "delay of eleven months." Because of the nature of Boblett's project—construction of his personal residence—such a delay could be construed as "loss of use."

Vought asserts that Boblett believed it to be the cause of delay in several ways, resulting in loss of use damages, including additional rent. Vought Mot. 9–12; Vought Oppo. 15. First, Boblett considered Vought responsible for the delay resulting from the inability to use a crane on the project because of Vought's property damage to the street. Vought Oppo. 15. Boblett also stated that because Vought completed work without ensuring a permit was in place, Vought further caused a delay when the City of Oakland suspended the project because of the lack of permit. *Id.* Finally, Boblett indicated that he experienced a delay caused by the additional time required by the subsequent contractor to fix Vought's alleged mistakes. Boblett Apr. 21, 2023 Decl. [Dkt. No. 51] at 3.

On its face, Vought appears to have identified possible loss of use "property damage" as defined by the policies. As before, that Boblett added further specification during discovery does not detract from the fact that at the *inception* of litigation, Allied World needed to "assume its duty to defend unless and until it [could] conclusively refute" any potential duty. *Montrose Chem. Corp.*, 6 Cal. 4th at 299. It has not done so.

Allied World contests Vought's framing of Boblett's claimed damages as "property damages." Instead, Allied asserts that "Boblett's alleged damages of construction delays and loss of rent, however, are the exact type of *economic losses* that CGL policies do not provide coverage

for." Allied World Oppo. 11 (emphasis added).  Citing *Stein-Brief Group v. Home Indemnity Company* and *American International Bank v. Fidelity & Deposit Company*, Allied World contends that California caselaw does not allow for damages resulting from loss of rent or as the result of delay in construction "to trigger liability coverage" for property damage.  Allied Oppo. 13–14.  In both cases, the courts concluded that "the inability to construct an improvement results in only economic loss."  65 Cal. App.4th 364, 372 (1998); 49 Cal. App. 4th 1558, 1572 (1996).

Allied World misunderstands the guiding principle limiting economic recovery in such instances.  "The correct principle, then, is *not* that economic losses, by definition, do not constitute property damage. . . . Rather, the correct principle is that losses that are *exclusively* economic, without any accompanying physical damage or loss of use of tangible property, do not constitute property damage."  *Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal. App. 5th 729, 739 (2018).  Here, Boblett asserted claims for lost rents, arguably "exclusively economic." *Id.*  However, this lost rent was in connection with alleged physical damage, discussed *supra*, and loss of use of tangible property—Boblett alleged that as a result of Vought's actions, construction on his home was delayed by at least 11 months.  Boblett Apr. 21, 2023 Decl. [Dkt. No. 51] at 4 (removing permitting issues from the calculation of delay); Boblett Jan. 24, 2023 Depo. [Dkt. No. 53] at 24 (alleging the possibility of additional delay caused by Vought).  Though again the clarification of his allegations occurred years after Boblett filed his cross-claim, Allied World offers no argument why any investigation it carried out foreclosed this understanding, and ultimately Allied World's duty to defend.  Cal. Ins. Code § 790.03(h)(3).

        **i.**        **"Occurrence"**

As with the cracks in the street, to properly establish potential liability for property damage, Vought must demonstrate that the "loss of use" property damage was "caused by an occurrence."  Policy. [Dkt. No. 1-3] at 6.  As a preliminary matter, Allied World fails to address this issue, elaborating only on its views concerning whether the cracks in the street constituted an occurrence.  *See* Allied World Oppo. 14–17.  Because "[a]n accident may exist when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity," I conclude that there is adequate information here to demonstrate possible

liability for an occurrence. *Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1291 (2015) (internal quotation marks and citation omitted). Here, Boblett alleged several "causal series of events" that he attributed to Vought's action or inaction—and neither his complaint nor his related statements "provide[d] a reason to think that" Vought "expected" any of the resulting outcomes. *Anthem Elecs.*, 302 F.3d at 1056; *see also Hartford Fire Ins. Co. v. Tempur-Sealy Int'l, Inc.*, 158 F.Supp.3d 877 (N.D. Cal. 2016).

***

For the reasons explained, I conclude that there is no genuine issue of material fact as to the potential for coverage. Allied World had a duty to defend Vought in the underlying Boblett Action.

## II.     OTHER CLAIMS

Because I conclude that Allied World owed Vought a duty to defend during the underlying Boblett action, I do not address Allied World's request for summary adjudication on Vought's second (alleging a duty to indemnify) and third (alleging a breach of the implied covenant of good faith and fair dealing) causes of action. Those claims will be decided at trial.

## CONCLUSION

Vought's Motion for Summary Judgment on its duty to defend claim is GRANTED. Allied World's Motion for Summary Judgment on Vought's duty to defend is DENIED except concerning its duty to defend Vought against allegations rooted in defective work product. Allied World's Motion for Summary Judgment on Vought's claims concerning the duty to indemnify and breach of the implied covenant of good faith and fair dealing claims is also DENIED.

**IT IS SO ORDERED.**

Dated: December 9, 2024

William H. Orrick
United States District Judge